IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| **MARVIN DIGGS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 22-cv-1035-TMP |
| | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| Defendant. | ) |

_____

**ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION**
_____

On March 2, 2022, Marvin Diggs filed a Complaint seeking judicial review of a social security decision.[1] (ECF No. 1.) Diggs seeks to appeal a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title XVI disability benefits. (R. 24.) For the following reasons, the decision of the Commissioner is REVERSED and REMANDED.

**I.   BACKGROUND**

**A.   Procedural History**

Prior to initiating the application that is at issue in this case, Diggs protectively filed a Title XVI application for

---

[1]After the parties consented to the jurisdiction of a United States magistrate judge on May 19, 2022, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 12.)

supplemental security income on December 20, 2017. (R. 12.) His claim was denied initially and upon reconsideration. (Id.) On April 23, 2019, following a hearing, the presiding Administrative Law Judge ("ALJ") rendered an unfavorable decision. (Id.) Diggs did not appeal that decision. (Id.)

On May 24, 2019, Diggs protectively filed another application for supplemental security income, alleging disability beginning on April 19, 2019. (Id.) The claim was denied initially on January 31, 2020, and again upon reconsideration on July 2, 2020. (Id.) Diggs filed a request for a hearing, which was held on January 14, 2021. (Id.) For the purposes of those proceedings, the ALJ considered the prior determination of disability to be binding through April 23, 2019. (Id.) The ALJ issued a decision on March 31, 2021, determining that Diggs was not disabled under § 1614(a)(3)(A) of the Social Security Act. (R. 24.) On January 27, 2022, the Appeals Council denied his request for further review. (R. 1.) He filed his complaint in the instant case on March 2, 2022. (ECF No. 1.)

Diggs has exhausted his administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner. Judicial review of the Commissioner's final decision is available if requested within sixty days of the mailing of the decision. 42 U.S.C. § 405(g). Diggs timely filed the instant action. (ECF No. 1.)

**B.    The ALJ's Decision and the Five-Step Analysis**

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis set forth in the Social Security Regulations to conclude that Diggs was not disabled. See 20 C.F.R. § 404.1520(a); (R. 24.) That five-step sequential analysis is as follows:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Petty v. Comm'r of Soc. Sec., No. 1:14-cv-01066-STA-dkv, 2017 WL 396791, at *2 (W.D. Tenn. Jan. 30, 2017) (citing Willbanks v. Sec'y of Health & Human Servs., 847 F.2d 301 (6th Cir. 1988)). "The claimant bears the burden of proof through the first four steps of the inquiry, at which point the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that

accommodate the claimant's residual functional capacity.'" Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004) (quoting Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003)).

At the first step, the ALJ found that Diggs had not engaged in substantial gainful activity since May 24, 2019, the date Diggs applied for disability benefits. (R. 15.) At the second step, the ALJ found that Diggs experienced severe impairments including status-post right total knee replacement with infection of hardware, mild left knee osteoarthritis, asthma/chronic obstructive pulmonary disease, and morbid obesity. (Id.) At the third step, the ALJ found that Diggs did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § Pt. 404, Subpt. P, App 1. (R. 16.)

When a claimant's impairments do not meet or equal a Listed Impairment, an assessment of their residual functional capacity ("RFC") is conducted, based on all the relevant medical and other evidence in the case record. 20 C.F.R. § 404.1520(e). The RFC is used at step four and, if necessary, step five in the process. First, at step four, it is used to determine whether the claimant can perform their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). If a claimant has the RFC to perform their past relevant work, they are not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ found that Diggs had the RFC to:

>perform sedentary work as defined in 20 CFR 416.967(a) except he can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; must avoid concentrated exposure to all respiratory irritants; must avoid all exposure to workplace hazards, such as operating moving machinery and working at unprotected heights; and due to leg pain and side effects of medications, he can understand, remember, carry out, and maintain adequate concentration, persistence, and pace on only simple and low-level detailed tasks throughout an 8-hour workday with customary work breaks.

(R. 16.) Based on these findings, the ALJ further found that Diggs was unable to perform his past relevant work as a furniture salesman or furniture mover. (R. 22.)

At step five, the ALJ considered Diggs's RFC as well as other factors in order to determine whether he could perform other work. (R. 22.) The ALJ noted that Diggs was forty-eight years old with at least a high school education. (Id.) He also considered the testimony of a vocational expert, who stated that someone with Diggs's capacity would be capable of working as a document preparer, an election clerk, or an addressor. (R. 23.) Based on these findings, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Id.) The ALJ therefore held that a finding of not disabled was appropriate. (Id.)

Diggs now seeks judicial review of the ALJ's decision. He argues that the ALJ incorrectly found that he was not disabled, that the ALJ improperly failed to evaluate whether Diggs met or

-5-

equaled Listings 1.17 and 1.18 at step three, that the ALJ erroneously evaluated the medical opinions presented, and that the case should be remanded for payment of benefits. (ECF No. 19.) The Commissioner contends that substantial evidence supports the ALJ's finding that Diggs did not meet or equal Listings 1.17 or 1.18, as well as his findings regarding Diggs's RFC and his ability to perform other work existing in significant numbers in the national economy. (ECF No. 20.)

## II.  ANALYSIS

### A.  Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which they were a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance,

and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.   The ALJ's Step Three Finding**

Diggs argues that the ALJ erred in finding that he does not meet Listings 1.17 and 1.18. At step three of the sequential evaluation process, the claimant has the burden of establishing a condition that satisfies the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listings). See 20 C.F.R. §§ 404.1505, 404.1520, 416.905, 416.920; Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001). Because the Listings permit a finding of disability based solely on medical evidence (without considering a claimant's vocational profile), the Commissioner applies a heightened evidentiary standard at step three. Lee v. Comm'r of Soc. Sec., 529 F. App'x 706, 710 (6th Cir. 2013). To establish an impairment that meets a Listing, a claimant must present "specific medical evidence to satisfy all of the criteria" of the Listing. Perschka v. Comm'r of Soc. Sec., 411 F. App'x 781, 786 (6th Cir. 2010) (citing 20 C.F.R. § 416.925). An impairment that manifests only some of the criteria, no matter how severely, does not qualify. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

An ALJ is required to address a particular Listing when the record raises a "substantial question" as to whether the claimant satisfies the requirements of the Listing. Smith-Johnson v. Comm'r of Soc. Sec., 579 F. App'x 426, 432 (6th Cir. 2014) (quoting Abbott v. Sullivan, 905 F.2d 918, 925 (6th Cir. 1990)). To raise a

"substantial question," the claimant must point to specific evidence that demonstrates they "reasonably could meet or equal every requirement of the listing." Smith-Johnson, 579 F. App'x at 432. If the claimant presents sufficient evidence to raise a "substantial question" at step three, "[a]n administrative law judge must compare the medical evidence with the requirements for Listed Impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." Reynolds v. Comm'r of Soc. Sec., 424 F. App'x 411, 415 (6th Cir. 2011). The ALJ must "actually evaluate" the evidence, compare it to the section of the Listing at issue, and give an "explained conclusion," in order to "facilitate meaningful judicial review." Reynolds, 424 F. App'x at 415-16. "Without it, it is impossible to say that the [ALJ's] decision at Step Three was supported by substantial evidence." Id. at 416 (citing Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 120 (3d Cir. 2000); Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999); Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996)).

The court must therefore begin by determining whether Diggs raises a substantial question as to whether he satisfies a Listing. Diggs claims that he meets or equals Listing 1.18. (ECF Nos 19, 21.) In order to meet or equal this Listing, a claimant must have an abnormality of any major joint in any extremity documented by:

    A. Chronic joint pain or stiffness, AND

    B. Abnormal motion, instability, or immobility of the affected joints, AND

    C. Anatomical abnormality of the affected joints noted on:

        1. Physical examination or

        2. Imaging, AND

    D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:

        1. A documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; or

        2. An inability to use one upper extremity to independently initiate, sustain and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or

        3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.18.

The record raises a substantial question as to whether Diggs satisfies the requirements of this Listing. The Commissioner does not dispute the applicability of sections A, B, and C to Diggs. (ECF No. 20.) Indeed, the record provides support for the

applicability of these sections to Diggs's condition. First, there is evidence that Diggs suffers from chronic joint pain and stiffness in his right knee. Diggs testified that he has experienced continuous pain in his lower right extremity since his onset date. (R. 48.) At his hearing, he described his condition as "a throbbing, sharp, just dull, aching pain" concentrated primarily on "the left side of the right knee they operated on." (R. 54.) In one evaluation, Dr. Jeffrey Uzzle noted that Diggs suffers from osteoarthritic stiffness in both knees. (R. 725.) He further reported that Diggs suffered pain in his right knee that he rated a seven out of ten. (R. 724.) Dr. Suresh Thota similarly observed that Diggs's right knee "[p]ain is sharp in nature" and that he "feels tightness in the lower right extremity." (R. 633.)

There is also evidence that Diggs suffers from abnormal motion, instability, or immobility of his affected joints. At his hearing, Diggs testified that walking on stairs or uneven surfaces causes him to feel "[l]ike I'm going to fall," and that he walks with a constant limp. (R. 50.) Medical evaluations by Nurse Mary Parks corroborated this testimony, noting that Diggs's gait was affected by a right leg limp. (R. 753.) She also observed that Diggs had a decreased range of motion in his right knee's flexion, extension, internal rotation, and external rotation. (R. 742.) Dr. Uzzle likewise noted that Diggs had limited knee flexion bilaterally. (R. 713.) He indicated that Diggs would be unable to

walk a block at a reasonable pace on rough or uneven surfaces. (R. 719.) Dr. Samuel Chung echoed this opinion and further stated that Diggs would be unable to travel without a companion for assistance or climb a few steps at a reasonable pace, even with the use of a single handrail. (R. 820.)

Finally, the anatomical abnormality has been noted on physical examination or imaging. One x-ray showed "soft tissue swelling about the knee." (R. 585.) Another found "noncompressibility of the popliteal vein leading into the posterior tibial vein." (R. 649.) An ultrasound revealed that Diggs was positive for "DVT [deep vein thrombosis] involving the popliteal and posterior tibial veins." (R. 638.) Thus, even though the Commissioner does not dispute the applicability of sections A, B, and C to Diggs, the undersigned independently finds that Diggs has raised a substantial question as to whether those sections apply to his condition.

The Commissioner solely disputes whether Diggs's condition satisfies section D of the Listing. (ECF No. 20.) He writes that while Diggs uses a cane, "the use of a cane is insufficient" to meet Listing 1.18, because Diggs "must need to use a walker, bilateral canes, or bilateral crutches." (Id. at PageID 917.) This is incorrect. Section D(2) of the Listing states that it applies to those with a documented medical need for a "one-handed, hand-held assistive device" with an "inability to use one upper

-12-

extremity to independently initiate, sustain and complete work-related activities involving fine and gross movements." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.18. One-handed, hand-held assistive devices include canes. Id. at § 1.00(c)(6)(d).

Diggs succeeds in demonstrating that there is a substantial question as to the applicability of section D to his condition. There is broad support for the proposition that Diggs has a medical need for a cane. Diggs testified that he has used one regularly since he underwent knee replacement surgery in 2019. (R. 47.) Both Dr. Uzzle and Nurse Parks noted on their Medical Statement Questionnaires that Diggs "require[s] the use of a cane to ambulate" and that "the use of a cane is medically necessary." (R. 715, 823.) They also both noted that the limitation had lasted or would last for twelve consecutive months, as required by section D(2). (R. 719, 827.)

There is also medical documentation of Diggs's inability to "complete work-related activities involving fine and gross movements." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.18. These movements are defined as follows:

> Fine movements, for the purposes of these listings, involve use of your wrists, hands, and fingers; such movements include picking, pinching, manipulating, and fingering. Gross movements involve use of your shoulders, upper arms, forearms, and hands; such movements include handling, gripping, grasping, holding, turning, and reaching. Gross movements also include exertional abilities such as lifting, carrying, pushing, and pulling.

-13-

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00(E)(4). In her Medical Statement Questionnaire, Nurse Parks indicated that with a cane, Diggs could not use his free hand to carry small objects. (R. 823.) Dr. Chung likewise stated that Diggs would be incapable of sorting, handling, or using paper files. (R. 820.) Given this evidence, Diggs has raised a substantial question as to whether his condition meets or equals Listing 1.18.

Because Diggs raises a substantial question as to whether he meets or equals a Listing, the ALJ was required to "actually evaluate" the evidence, compare it to the sections of the Listing at issue, and give an "explained conclusion." Reynolds, 424 F. App'x at 415-16. The ALJ did not do so. Instead, the ALJ simply stated that this impairment did not meet or medically equal the severity of a listed impairment. (R. at 16.) Specifically, the ALJ wrote:

> The record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment and no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairment(s) medically equal a listed impairment.

(Id.) The ALJ did not mention any specific Listing in his decision, nor did he compare a Listing to the medical evidence that had been presented. (Id.)

-14-

Courts are permitted to look elsewhere in an ALJ's decision to determine whether they made sufficient factual findings to support their conclusion at step three. Forrest v. Comm'r of Soc. Sec., 591 F. App'x 359, 366 (6th Cir. 2014); Bledsoe v. Barnhart, 165 F. App'x 408, 411 (6th Cir. 2006). However, courts are not permitted to speculate as to what the ALJ may have concluded had they considered the medical evidence under the criteria of a given Listing. Harvey v. Comm'r of Soc. Sec., No. 16-3266, 2017 WL 4216585, at *6 (6th Cir. Mar. 6, 2017). Step three determinations are "determinative and necessary," and only ALJ's are authorized to make them. Id. at *6-7. Judicial gap-filling is not permitted. Id. at *7. Where the ALJ has failed to make this determination, the error that occurs is not harmless because "if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits." Reynolds, 424 F. App'x at 416. Under these circumstances, "the court must reverse and remand, even if the factual determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different." Id. at 414 (quoting Kalmbach v. Comm'r of Soc. Sec., 409 F. App'x 852, 859 (6th Cir. 2011)) (internal quotations omitted); see also Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 545-46 (6th Cir. 2004). Because Diggs has raised a substantial question as to whether Listing 1.18 applies to his condition, and because the ALJ did not compare the medical evidence

to the requirements of the Listing, the Commissioner's decision must be reversed and remanded.

**C.   The ALJ's Finding of "Not Disabled"**

Diggs additionally argues that the ALJ erred in finding that Diggs was not disabled. (ECF No. 19.) The ALJ initially reached this finding at step five of his analysis. There, he examined Diggs's RFC, his biographical factors, and the testimony of a vocational expert. He subsequently concluded that because "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, . . . [a] finding of 'not disabled' is therefore appropriate." (R. 23.)

As stated in the previous section, the Commissioner's decision is reversed and remanded to provide the ALJ with the opportunity to perform the step three analysis in light of Listing 1.18. At step three of the analysis, "[a] claimant who meets or equals a listed impairment is presumptively disabled, without consideration of her age, education, or work experience." Lee, 529 F. App'x at 710; see also 20 C.F.R. § 404.1520(d). Remand may result in a finding that Diggs meets or equals Listing 1.18, and thus a finding that he is presumptively disabled. Because the ALJ's analysis may end at step three on remand, the undersigned need not reach the issue of whether the ALJ appropriately rendered a finding of "not disabled" at step five.

-16-

**D.   Scope of Remand**

Finally, Diggs asks the court to reverse the ALJ's decision without remanding for rehearing, and to instead remand the matter for payment of benefits. (ECF No. 19 at PageID 902.) "Benefits may be awarded immediately if all necessary factual issues have been resolved, 'the proof of disability is strong, and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming.'" Gentry v. Comm'r of Soc. Sec., 741 F.3d 708, 730 (6th Cir. 2014) (quoting Kalmbach, 409 F. App'x at 865). The court does not find that immediate award of benefits is appropriate in this case. Although there is a substantial question as to whether Diggs meets Listing 1.18, there is also evidence that opposes such a finding. For example, while Nurse Parks indicated that with a cane Diggs could not use his free hand to carry small objects (R. 823), Dr. Uzzle wrote that he could. (R. 715.) These opinions should be weighed by an ALJ in light of Listing 1.18. As such, the matter is remanded for rehearing to provide the ALJ with an opportunity to evaluate the evidence, compare it to Listing 1.18, and give an explained conclusion regarding whether Diggs meets the Listing.

### III. CONCLUSION

For the reasons above, the decision of the Commissioner is REVERSED and REMANDED.

-18-

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

November 9, 2022
Date